# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2020

Lyle W. Cayce
Clerk

No. 18-31296

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

GABRIEL CARRETO-SANCHEZ, *also known as* EL BUKI CARRETO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2-17-CR-73-2

Before SMITH, CLEMENT, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

I.

Gabriel Carreto-Sanchez, a removable alien, pleaded guilty of possession with intent to distribute cocaine and conspiracy to commit the same. He faced a maximum of 40 years of imprisonment and a lifetime of supervised

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

release ("SR") for each count.  At the proceeding where Carreto-Sanchez pleaded, the district court informed him that pleading guilty could carry up to 80 years' imprisonment.  But the court neglected to explain what the maximum term of SR was and that Carreto-Sanchez could be imprisoned for violating the terms of SR.

Based on Carreto-Sanchez's criminal history and the amount of drugs involved in the offense, the Presentence Investigation Report ("PSR") calculated a guideline range of 37–46 months.  But because the statute carried a mandatory minimum of 60 months, and because the PSR found Carreto-Sanchez was not eligible for the "safety valve" release from that minimum under 18 U.S.C. § 3553(f), the PSR recommended 60 months.  Carreto-Sanchez objected.  The PSR also reported that the guidelines counseled at least four years' SR and recommended four special conditions of SR.

At the initial sentencing hearing, the court confirmed that Carreto-Sanchez had read and understood the PSR.  Carreto-Sanchez was not sentenced at that hearing, however, because the court wanted to give him more time to share information with the government before determining whether he qualified for the safety valve.

Two months later, the court found that Carreto-Sanchez did qualify for the safety valve, changing the guideline range to 30–37 months.  Nothing else in the PSR changed.  The court sentenced Carreto-Sanchez to 50 months—a 13-month variance—listing, as justifications, the seriousness of the offense and Carreto-Sanchez's continued contact with another drug dealer regarding a co-conspirator.

The court also imposed a term of SR of four years with several discretionary conditions.  The court did not orally explain those conditions, though all of them were described in the PSR, which the court adopted.  Carreto-Sanchez appeals his sentence on the grounds that (1) imposing SR was

unreasonable given that he is a removable alien, and (2) the conditions of SR that were not orally explained at sentencing are void.

## II.

Carreto-Sanchez first contends that the district court erred in imposing SR despite his status as a removable alien. Because Carreto-Sanchez did not object, the parties agree we review for plain error only. *United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020) (en banc).

"The court ordinarily should not impose a term of supervised release in a case in which . . . the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c). But we've ruled "[t]he word 'ordinarily' is hortatory, not mandatory, in this provision." *United States v. Dominguez-Alvarado*, 695 F.3d 324, 329 (5th Cir. 2012). Where a court imposes SR on a removable alien, it must give a "particularized explanation," but this requirement is "not onerous." *United States v. Becerril-Pena*, 714 F.3d 347, 349 (5th Cir. 2013) (internal quotation omitted). Both parties agree the district court's stated reasons for the sentence meet that small burden, as do we.

What the parties disagree about is whether the court was under the mistaken impression that it was bound by the statutory minimum term of SR despite finding Carreto-Sanchez was eligible for the safety valve, and if so, whether that requires remand. The only indication that the district court may have been relying on the statutory minimum is that the term imposed—four years—matches the statutory minimum. But four years was also the term recommended by the guidelines after accounting for the safety valve. And in any event, because the court imposed an upward variance, there is no reason to believe it would've imposed a shorter term of SR, so any fathomable error did not affect Carreto-Sanchez's substantial rights. *See, e.g.*, *United States v. Miranda-Delgado*, 535 F. App'x 398, 398–99 (5th Cir. 2013) (per curiam).

No. 18-31296

Therefore, there is no plain error.

### III.

Carreto-Sanchez asserts that the district court erred because it "did not specifically ask whether [he] and his counsel had read and discussed the [PSR]." But because, at the first sentencing hearing, the court did specifically ask whether he and his counsel had read and discussed the PSR, we disagree.

A sentencing court must "verify that the defendant reviewed the PSR with counsel. If he has not, the sentencing should not proceed." *Diggles*, 957 F.3d at 560 (citing FED. R. CRIM. P. 32(i)(1)(A)). This protects the Fifth Amendment right to be given "notice of the sentence and an opportunity to object." *Id.*

At the initial sentencing hearing on October 10, the court opened the proceedings by asking Carreto-Sanchez whether he had "gone over the pre-sentence report with [his] attorney." He answered "Yes" and confirmed that it had "been translated to" him. The court then orally adopted the PSR at the sentencing hearing on December 19. At that second hearing, the court did not re-confirm that Carreto-Sanchez and his counsel had reviewed the PSR. But, in the two months between hearings, the PSR did not change materially.[1]

Because Carreto-Sanchez "confirm[ed] review of the PSR," *Diggles*, 957 F.3d at 560, and the PSR was not materially altered thereafter, the district court was not required to re-confirm his review before orally adopting it. Carreto-Sanchez had notice of the sentence and issued several objections to

---

[1] On December 12, an addendum was added to the PSR reflecting the use of the 2018 Sentencing Guidelines, the new December 19 sentencing date, and the sentencing dates of two of defendant's co-conspirators. No other new information was added.

No. 18-31296

it.  The district court did not err.

Relatedly, Carreto-Sanchez avers that the district court erred because it "fail[ed] to pronounce conditions of [SR] included in the written judgment."  The written judgment includes four discretionary conditions, which require Carreto-Sanchez to (1) be surrendered to custody of ICE for removal proceedings; (2) submit to searches conducted by a probation officer; (3) pursue educational or vocational training; and (4) maintain full-time employment.[2]  Each of those conditions appears in the PSR, which the court orally adopted at sentencing.

"A sentencing court must pronounce conditions that are discretionary . . . ."  *Diggles*, 957 F.3d at 563.  It may do so by "orally adopt[ing] a document recommending those conditions."  *Id.*  Therefore, "[b]ecause the district court adopted the conditions the PSR proposed, it pronounced the [four] conditions it was required to . . . ."  *Id.*  Thus, it did not err.

AFFIRMED.[3]  The mandate shall issue immediately.

---

[2] The latter three of these are implicated only if Carreto-Sanchez is not removed.

[3] We requested briefing on two other issues: (1) whether Carreto-Sanchez's plea was knowing and voluntary given the district court's failure to explain that he could face SR and (2) whether the upward variance of 13 months was reasonable.  The parties agree that neither merits resentencing.  First, the parties agree that the district court's failure to notify Carreto-Sanchez that pleading guilty could lead to SR is harmless because his worst-case scenario of 182 months is less severe than the 960-month statutory maximum of which the district court notified him.  Second, both parties agree that the district court adequately justified its upward variance.